UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
UNITED STATES OF AMERICA              :
                                      :
           -v-                        :       06 Cr. 600 (DLC)
                                      :
BASHI MUSE, et al.,                   :       OPINION AND ORDER
                                      :
                Defendants.           :
                                      :
------------------------------------- X

Appearances:

For United States of America:

Daniel Lawrence Stein
Guruanjan Sahni
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

For the Defendants:

Sidney L. Moore Jr.
Counsel to Defendant Abdi Emil Moge
34 Peachtree Street, Suite 2560
Atlanta, Georgia 30303

Sam A. Schmidt
Counsel to Defendant Bashir Ahmed
111 Broadway, Suite 1305
New York, New York 10006

Steven R. Peikin
Germaine Corprew
Counsel to Defendant Hussein Ahmed Mohamed
125 Broad Street
New York, NY 10004

DENISE COTE, District Judge:

Defendant Bashi Muse and forty-three co-defendants have moved to dismiss all counts of the superseding indictment filed on July 24, 2006 ("Indictment"), or, in the alternative, to strike certain language from the Indictment.[1]  The six-count Indictment charges violations of federal drug and money laundering statutes in connection with a conspiracy to import and distribute widely within the United States cathinone in a form commonly known as khat.  The khat plant is a shrub that is cultivated in Kenya, Ethiopia, and other countries in the Horn of Africa; its leaves are chewed for stimulant effect. Cathinone is a Schedule I controlled substance.  The defendants contend among other things that the statute does not give them fair notice of the crimes with which they are charged and that the Indictment improperly criminalizes the distribution of a detectable amount of cathinone.  For the following reasons, the motion to dismiss is denied.[2]

---

[1] The defendants also move for a bill of particulars, but provide no argument in support of the motion.  The motion is in any event premature.  See S.D.N.Y. L. Crim. R. 16.1.

[2] The motion was also addressed to charges concerning a second substance in the khat plant, cathine.  As described below, the Government's concession has made it unnecessary to consider that prong of the motion.

INDICTMENT

Counts I and II of the Indictment allege that the defendants and others "unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States." The object of the Count I conspiracy is distribution and possession with intent to distribute "a controlled substance, to wit, mixtures and substances containing a detectable amount of cathinone, in a form commonly known as 'khat'. . . ." Count II uses an identical description of the controlled substance while charging that the object of that conspiracy was to import that controlled substance.  The Indictment states that the active ingredients in the khat plant include "cathinone, a stimulant which is classified as a Schedule I controlled substance under United States law, and cathine, which is classified as a Schedule IV controlled substance under United States law."[3]  It explains that "[k]hat is most potent when used within days of cultivation," and that khat is transported from Kenya and Ethiopia to Europe by airplane, and subsequently to the United

---

[3] The Government consents to striking reference to cathine from the Indictment but purports to reserve the right to present a superseding indictment charging offenses involving cathine. If the Government wishes to bring allegations concerning cathine against the defendants named in the Indictment, it must do so within ten days of this Opinion in order to allow the defendants ample time to renew their motion to dismiss those charges and, if the charges should survive, to prepare for trial.

States with human couriers or by express mail.  The various

defendants are accused of being leaders and organizers, regional

distributors, transporters, or money launderers in an

international organization "that imported and distributed at

least 25 tons of khat, with a street value of more than $10

million."

Count III alleges that five of the defendants ("Money

Laundering Defendants") and others conspired to violate Section

1956(a) of Title 18, United States Code.  In connection with the

two objects of this conspiracy, it alleges that the Money

Laundering Defendants

> knowing that the property involved in certain
> financial transactions, to wit, the transfer of
> hundreds of thousands of dollars in cash, represented
> the proceeds of some unlawful activity, unlawfully,
> willfully, and knowingly would and did conduct and
> attempt to conduct such financial transactions which
> in fact involved the proceeds of specified unlawful
> activity, to wit, the proceeds of illegal narcotics
> transactions . . . .

In the first object, it adds that the conduct included "knowing

that the transactions were designed in whole and in part to

conceal the nature, the location, the source, the ownership and

the control of the proceeds of specified unlawful activity, in

violation of . . . Section 1956(a)(1)(B)(i)."  In charging the

second object, it adds that the conduct was "with the intent to

promote the carrying on of specified unlawful activity, to wit,

the importation and distribution of khat, in violation of . . .

Section 1956(a)(1)(A)(i)."  The Money Laundering Defendants are alleged to have used hawalas, which the Indictment defines as "informal networks of money remitters commonly used in Africa and the Middle East to transfer money," to launder khat proceeds.

Counts IV through VI ("CCE counts") charge defendants Bashi Muse, Ali Awad, and Abdi Emil Moge ("CCE Defendants") with engaging in continuing criminal enterprises.  Each defendant's series of violations includes conspiracies to distribute or import "a controlled substance, to wit, mixtures and substances containing a detectable amount of cathinone, in a form commonly known as 'khat,'" as well as at least one substantive cathinone distribution or importation charge.  Finally, the Indictment includes forfeiture allegations.

The original indictment was filed on July 10, 2006.  The Indictment, which is the first superseding charging instrument, was filed on July 26.  Following a conference of September 29, trial was set for June 4, 2007.

The defendants have jointly moved to dismiss the Indictment, and it is to that motion that this Opinion is addressed.  The motion was filed on November 17, and was fully submitted on December 19.

DISCUSSION

The defendants argue, first, that the regulation that lists cathinone as a controlled substance under the scheme created by the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., fails to provide a constitutionally required warning that trafficking in khat may involve trafficking in a controlled substance.  Next, they argue that the Indictment insufficiently alleges criminal offenses because it alleges the existence of only "a detectable amount" of cathinone and because khat leaves are not a "mixture or substance."  The defendants also move to strike certain language from the Indictment as prejudicial surplusage and to dismiss the Indictment because the grand jury presentation was defective.  These arguments are addressed in the order they are described here.

I.   Fair Warning

The defendants move to dismiss the Indictment because the implementing regulations to the CSA fail to provide a constitutionally required warning that khat is related to cathinone, a controlled substance.  They argue that an ordinary person reading the CSA and its implementing regulations would not be aware of this relationship, and therefore would not know that trafficking in khat could violate the federal drug laws.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that criminal statutes give

fair warning of the conduct they prohibit.  "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  Betancourt v. Bloomberg, 448 F.3d 547, 552 (2d Cir. 2006) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).  The "touchstone" of the inquiry is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  United States v. Roberts, 363 F.3d 118, 123 (2d Cir. 2004) (citing United States v. Lanier, 520 U.S. 259, 266-67 (1997)).  Where a vagueness challenge rests on the complaint that the statute does not give fair notice to a defendant (as opposed to inadequate guidance to law enforcement), the statute's inclusion of a scienter requirement presents a significant hurdle to the challenger.  Id. (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982)).  When a compound is listed as a Schedule I controlled substance, that listing "automatically put[s] the public on clear notice that those chemicals . . . would be treated for the purposes of federal law as a Schedule I controlled substance."  Id. at 124 n.3.

Title 21 of the United States Code contains the federal drug statutes.[4]  For example, Section 841 of that title makes it a crime to "distribute . . . a controlled substance."  21 U.S.C. § 841(a)(1).  The penalties for this crime are structured around the quantity and type of drug distributed.  Id. § 841(b).

Congress created five schedules of controlled substances. Id. § 812(a).  Schedule I is for substances with a "high potential for abuse," no currently accepted medical use in the United States, and a lack of accepted safety for use of the substance under medical supervision.  Id. § 812(b)(1).  Congress conferred upon the Attorney General, who must act in consultation with the Secretary of Health and Human Services, the power to update the schedules on a semi-annual basis for two years after October 27, 1970, and on an annual basis thereafter. Id. §§ 811(a), 812(a); see Gonzales v. Raich, 545 U.S. 1, 14-15 (2005).  On January 14, 1993, the Drug Enforcement Administration ("DEA"), as the Attorney General's delegate, added cathinone to Schedule I.  58 Fed. Reg. 4316 (Jan. 14, 1993); see 28 C.F.R. § 0.100(b) (delegating authority to DEA).

---

[4] In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act.  Title II of that Act, known as the CSA, addresses drug control and enforcement as administered by the Attorney General and the Drug Enforcement Administration. Title III concerns the import and export of controlled substances.  See Gonzales v. Raich, 545 U.S. 1, 12 n.19 (2005).

Schedule I currently consists of over one hundred substances that are categorized as either opiates, opium derivatives, hallucinogenic substances, depressants, or stimulants.  21 C.F.R. § 1308.11.  Cathinone is classified as a stimulant.  This section of Schedule I reads in pertinent part:

> (f)  Stimulants.  Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains <u>any quantity</u> of the following substances having a stimulant effect on the central nervous system, including its salts, isomers, and salts of isomers: . . .
>
> 3)  Cathinone . . .
> Some trade or other names: 2-amino-1-phenyl-1-propanone, alpha-aminopropiophenone, 2-aminopropiophenone, and norephedrone . . . .

21 C.F.R. § 1308.11(f)(3) (emphasis supplied).  The Schedule includes the DEA Controlled Substance Code Number with each substance; cathinone's is 1235.  <u>Id.</u>

The CSA defines the term "depressant or stimulant substance" to include, among other substances, "any drug which contains <u>any quantity</u> of a substance which the Attorney General, after investigation, has found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect."  21 U.S.C. § 802(9)(D) (emphasis supplied).  The statute imposes on the Secretary for Health and Human Services the obligation to advise the Attorney General of any new-drug application for a drug "having a stimulant,

depressant, or hallucinogenic effect on the central nervous system" that appears to have "an abuse potential."  Id. § 811(f).

The CSA and its implementing regulations give fair notice to both the public and law enforcement that cathinone is a Schedule I controlled substance.  The statute was abundantly clear at the time covered by the Indictment's charges that the distribution of cathinone is criminal.  See United States v. Caseer, 399 F.3d 828, 836 (6th Cir. 2005); United States v. Sheikh, 367 F.3d 756, 764 (8th Cir. 2004); United States v. Hussein, 351 F.3d 9, 15, 16 (1st Cir. 2003).

In their motion to strike the listing of cathinone from Schedule I on the ground that the statute is void for vagueness as applied to them, the defendants do not actually argue that there is any ambiguity in the law's identification of cathinone. Instead, they argue that the statute is invalid because it did not provide sufficient warning that cathinone is contained in the khat plants, particularly to Somali immigrants to this country.

To appreciate the defendants' argument, some background is necessary.  Cathinone is only one of the stimulants present in the khat plant.  Without special precautions, cathinone degrades swiftly after the khat plant is harvested, and there is little likelihood that it is present in the plant in any appreciable

10

quantity after its arrival in this country from Africa, or that it can contribute much if at all to any stimulant effect that the plant may still have after that lengthy journey.  The defendants contend that by not listing "khat" as the controlled substance, the statute has unfairly ensnared the Somali defendants in this country, who were simply using khat for religious and social purposes, as their community has for centuries in Africa.

The defendants' argument misses the mark.  Khat is not a controlled substance.  <u>Argaw v. Ashcroft</u>, 395 F.3d 521, 524 (4th Cir. 2005).  The Government will not be able to secure a conviction on a theory that a defendant knowingly and intentionally distributed khat.[5]  The Government bears the burden of showing that each defendant knowingly and intentionally agreed to participate in a conspiracy to distribute a controlled substance.  <u>See</u> <u>United States v. Roberts</u>, 363 F.3d 118, 123 n.1 (discussing elements of conspiracy to distribute a controlled substance under Sections 841(a)(1), 841(b)(1)(C), and 846).

---

[5] In its opposition to this motion, the Government generally acknowledges its burden, but at times uses formulations that suggest it harbors the hope that it can convict the defendants of distribution of khat without also proving that each defendant understood khat to contain a controlled substance.  It appears to argue that distribution of khat "can be illegal" and that federal law gives notice of a "prohibition on khat."  The Indictment refers as well to khat far more frequently than to cathinone.  To repeat, khat is not a controlled substance, and the Government will be required to prove knowledge and intent as described in this Opinion.

To convict a defendant of conspiracy to distribute or possess with intent to distribute a controlled substance under Sections 841(a)(1), 841 (b)(1)(C) and 846 as charged in Count I, the Government must prove (1) that the agreement to distribute cathinone charged in Count I existed, United States v. Jones, 455 F.3d 134, 146 (2d Cir. 2006), and (2) that the defendant "knowingly joined and participated in the objectives of the conspiracy." United States v. Jones, 30 F.3d 276, 282 (2d Cir. 1994). Specifically, the Government will have to show that each defendant participated in the conspiracy with knowledge of its unlawful purpose and with the intent to aid in the accomplishment of that purpose. While a defendant need not know the exact nature of the controlled substance, the Government must show that the defendant knew that the aim of the conspiracy was to distribute "some controlled substance." United States v. Morgan, 385 F.3d 196, 206 (2d Cir. 2004); see Caseer, 399 F.3d at 839 (khat); Hussein, 351 F.3d at 18-19 (khat).

The Government asserts it will meet its burden by showing that each defendant "had actual knowledge that khat contains a controlled substance." The scienter requirement in the Indictment's charges fully addresses the defendants' concern that they may be convicted of distributing khat without fair notice that the crime is actually conspiracy to distribute the controlled substance cathinone. See Roberts, 363 F.3d at 123

(observing that a fair notice challenge to the statute defining a "controlled substance analog," as applied to 1, 4-butanediol, "must be met with some measure of skepticism" because of Section 841(a)'s scienter requirement).

II.  Sufficiency of the Indictment

The defendants challenge the sufficiency of the Indictment.[6] They principally contend that the Indictment's use of the phrase "mixtures and substances containing a detectable amount of cathinone" is improper since it seeks to criminalize distribution of khat based on the presence of any detectable amount of cathine.  They assert that the Indictment must charge that the defendants conspired to distribute a "marketable" or "usable" quantity of cathinone in order for it to be a legally sufficient charging instrument.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed.R.Crim.P. 7(c)(1).

To satisfy the pleading requirements of Fed.R.Crim.P. 7(c)(1), <u>an indictment need do little more than to</u>

---

[6] The parties' briefs largely confine themselves to a discussion of Counts I and II.  The remaining counts incorporate the first count, and depend for their sufficiency on the adequacy of that charge.  To the extent that Count III, the money laundering charges, refers to "importation and distribution of khat," it survives this motion because of its incorporation of Count I, which clearly identifies cathinone as the controlled substance regulated by law and khat as its common form.

> track the language of the statute charged and state
> the time and place (in approximate terms) of the
> alleged crime.  An indictment must be read to include
> facts which are necessarily implied by the specific
> allegations made.  In short, an indictment is
> sufficient if it, first, contains the elements of the
> offense charged and fairly informs a defendant of the
> charge against which he must defend, and, second,
> enables him to plead an acquittal or conviction in bar
> of future prosecutions for the same offense.

United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002)

(citation omitted) (emphasis supplied).

As described above, Counts I and II charge that the

defendants conspired to distribute and import, respectively,

"mixtures and substances containing a detectable amount of

cathinone, in a form commonly known as 'khat.'"  The defendants

correctly point out that the term "detectable amount" is not

found in the provisions of Title 21 on which Counts I and II

rest, to wit, Sections 841(a)(1) or 841(b)(1)(C), which

criminalize the distribution of cathinone, or in Sections 952(a)

or 960(b)(3), which criminalize importation of cathinone.[7]  Each

_____

[7] Instead of using the prefatory language to Section 1308.11(f),
which prohibits "any material, compound, mixture, or preparation
which contains any quantity of . . . cathinone," 21 C.F.R. §
1308.11(f)(3), the Indictment uses the prefatory language from
the mandatory minimum drug provisions, which apply to any
"mixture or substance containing a detectable amount of" the
identified controlled substances.  See, e.g., 21 U.S.C. §
841(b)(1)(A).  As the parties' briefs admit, this choice of
language has no effect on the strength of the defendants'
argument, which the defendants contend applies with equal force
to the terms "mixture," "substance," and "material."

of these sections refers simply to "a" controlled substance or "any" controlled substance.[8]

The language of the CSA provides unrefuted evidence that Congress did not intend to restrict liability to the presence of any particular quantity of cathinone.  As indicated above, the prefatory language of Section 1308.11(f), which adds cathinone to Schedule I, and the CSA definition of a stimulant each refer to "any quantity."  21 C.F.R. § 1308.11(f); 21 U.S.C. § 802(9)(D).  When Congress chose to impose mandatory minimum terms of imprisonment based on distribution of specified quantities of a mixture or substance, it did so based on the presence of as little as "a detectable amount" of the controlled substance in the quantity.  For example, a ten-year mandatory minimum term of imprisonment is imposed upon a defendant who distributes "1 kilogram or more of a mixture or substance containing <u>a detectable amount</u> of heroin."  21 U.S.C. § 841(b)(1)(A) (emphasis supplied).

When Congress wanted a particular quantity to be dispositive, it stated so explicitly.  This is true with respect to the quantities that trigger imposition of mandatory minimum sentences, and also with respect to the scheduling of some drugs.  Returning again to the heroin example, a ten-year

---

[8] These counts also refer to the conspiracy provisions of the drug laws:  Sections 846 and 963 of Title 21, United States Code.

mandatory minimum term of imprisonment is required for
distribution of "1 kilogram" of a substance containing heroin.
21 U.S.C. § 841(b)(1)(A).  A few compounds are classified in a
particular schedule depending on their concentrations.  For
example, opium, which is ordinarily a Schedule II controlled
substance, 21 C.F.R. § 1308.12(b)(1), is a Schedule III
controlled substance provided that it is "[n]ot more than 500
milligrams of opium per 100 milliliters or per 100 grams or not
more than 25 milligrams per dosage unit, with one or more
active, nonnarcotic ingredients in recognized therapeutic
amounts.  21 C.F.R. § 1308.13(e)(1)(vii).

    These formulations indicate that unless it explicitly
stated otherwise, Congress chose to base liability on the
presence of "any" quantity of the controlled substance.  This
reflects the "market-oriented" approach adopted by Congress in
1986, which imposes punishment based upon "the total quantity of
what is distributed, rather than the amount of pure drug
involved."  Chapman v. United States, 500 U.S. 453, 461 (1991)
(citation omitted) (holding that weight of blotter paper
containing LSD determined mandatory minimum sentence).  The
statute is concerned with "the amount of drugs that reach the
streets" and not with whether the drugs, in their consumable
form, are "pure or impure."  United States v. Acosta, 963 F.2d
551, 554 (2d Cir. 1992).  Thus, Section 841(b)(1)(C) applies to

distribution of any "detectable" quantity of a controlled substance even if it is present in an impure form or severely diluted.  See Love v. Menifee, 333 F.3d 69, 71 (2d Cir. 2003) (referring to Section 841(b)(1)(C) as applying to "detectable but indeterminate" quantities of controlled substances); United States v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001) (the penalties "under § 841(b)(1)(C) [are] for unlawfully distributing any detectable quantity of any Schedule I or II controlled substance"); United States v. Hussein, 230 F.Supp.2d 109, 115 n.23 (D.Me.), aff'd, United States v. Hussein, 351 F.3d 9 (1st Cir. 2003) (khat prosecution).

The defendants next argue that in Section 1308.11(f), the clause "having a stimulant effect . . ." qualifies the phrase "any material, compound, mixture, or preparation."  21 C.F.R. § 1308.11(f).[9]  Based on this construction, they contend that the Government must charge (and prove at trial) that the quantity of cathinone in the khat distributed by the defendants was either "marketable" or "usable," that is, that there was sufficient cathinone in the khat that the cathinone can be shown to have had a stimulant effect when chewed.  Any other standard, they

---

[9] Again, this provision reads in pertinent part:  "(f) Stimulants.  Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers, and salts of isomers . . . ."  21 C.F.R. § 1308.11(f) (emphasis supplied).

argue, impermissibly risks that the defendants are being charged
with and will be convicted of selling khat, which is not a
controlled substance.

The clause "having a stimulant effect" does not modify the
phrase "any material compound, mixture, or preparation."  It
modifies the word "substances," which is the word that
immediately precedes it.  The statutory language provides ample
confirmation of this construction.

As already noted, Schedule I is subdivided into five parts.
The first two categories are opiates and opium derivatives.  21
C.F.R. § 1308.11(b), (c).  The prefatory language for the third
category describes "any quantity of the following hallucinogenic
substances . . . ."  Id. § 1308.11(d).  The introductions to the
fourth and fifth categories include the phrases "any quantity of
the following substances having a depressant effect on the
central nervous system" and "any quantity of the following
substances having a stimulant effect on the central nervous
system," respectively.  Id. § 1308.11(e), (f) (emphasis
supplied).  These categories mirror those introduced by Congress
when it first established its schedules, and reflect the
obligations of the Secretary of Health and Human Services to
inform the Attorney General of new drugs "having a stimulant,
depressant, or hallucinogenic effect" where there is a potential
for abuse, and of the Attorney General to make findings after

18

investigation about a drug's potential for abuse because of
these effects.  See 21 U.S.C. §§ 802(9)(D), 811(f).
Consequently, the schedules repeatedly use this same
formulation.  For instance, Schedule III lists four different
stimulants, including amphetamines, using the same formulation:
"Unless specifically excepted or unless listed in another
schedule, any material, compound, mixture, or preparation which
contains any quantity of the following substances having a
stimulant effect on the central nervous system: . . . ."  21
U.S.C. § 812(c), Schedule III(a).  Read in context, it is clear
that the reference to a "stimulant effect" assists in
categorizing the Schedule I substances, and is not intended to
impose on the Government the burden to charge or prove at trial
that the quantity of drugs at issue actually had such an effect.
See Acosta, 963 F.2d at 554 (Congress was concerned with "the
amount of drugs that reach the streets, whether pure or
impure").

     If Congress' intent had been as the defendants argue, then
the Government would have the burden of showing that the drugs
at issue in every prosecution actually have a hallucinogenic,
depressant, stimulant or other forbidden effect, but the case
law imposes no such burden.  In the context of distribution
cases where the drugs have not been seized, or conspiracy cases
where no drugs were ever possessed or distributed, it would of

course be impossible for the Government to meet this burden.  As
the Third Circuit observed decades ago in rejecting a similar
argument about the depressant phencyclidine or PCP, Congress has
essentially decided that "some substances are hazardous in any
quantity, even in quantities insufficient to have a depressant
effect upon the central nervous system."  United States v.
Picklesimer, 585 F.2d 1199, 1203 (3d Cir. 1978) (emphasis
supplied); see also United States v. Durham, 941 F.2d 886, 890-
91 (9th Cir. 1991) (methamphetamine); United States v. White,
560 F.2d 787, 789-90 (7th Cir. 1977) (amphetamines); United
States v. Nickles, 509 F.2d 810, 811 (5th Cir. 1975)
(phencyclidine hydrochloride); Samatar v. Clarridge, 2006 WL
355684, at *32 (S.D. Ohio Feb. 16, 2006) (discussing listing of
cathinone in state statute that tracks federal statutory
language).

In listing cathinone as a stimulant, the Attorney General
has already determined that it has a stimulant effect, and has
"considered fully" its effects in making the scheduling
decision.  White, 560 F.2d at 789.  As the DEA explained when it
issued the regulation adding cathinone to Schedule I,
"cathinone's abuse potential is similar to those of the
stimulants[] amphetamine and methamphetamine."  58 Fed. Reg.
4316 (Jan. 14, 1993).  In sum, there is "no requirement that the

Government prove a stimulant effect to the jury." White, 560
F.2d at 790.

The defendants next argue that the Indictment is flawed
since khat is not a "mixture or substance" containing cathinone,
as charged in the Indictment.  If that is so, then the only
thing that matters is the cathinone itself, and the defendants
argue that the quantity of cathinone in the plants imported and
distributed by the defendants is too infinitesimal to be
"usable" or "consumable."  The defendants assert that to state a
crime the Indictment must charge that a usable or consumable
amount of cathinone was imported or distributed.

This variation in the defendants' argument is built on many
false premises.  First, the statutory sections at issue do not
use the formulation "mixture or substance," since it is a
statutory term that appears in the mandatory minimum term of
imprisonment provisions and not in Section 841(b)(1)(C).
Compare 21 U.S.C. § 841(b)(1)(C) with id. §§ (b)(1)(A), (B).
This formulation appears in the Indictment to give the
defendants further notice of the crimes with which they are
charged, and does not reflect a failure to charge statutory
language.

Second, khat is clearly a substance.  Even though they are
terms used in other provisions of the CSA, the words mixture and
substance are not defined by the CSA or its implementing

21

regulations.  They must, therefore, be given their ordinary

meaning.  <u>Chapman</u>, 500 U.S. at 462 (defining "mixture").  A

substance is defined as, among other things, "material from

which something is made and to which it owes its characteristic

qualities," "a distinguishable kind of physical matter," and

"matter of definite or known chemical composition : an

identifiable chemical element, compound, or mixture -- sometimes

restricted to compounds and elements."  <u>Merriam-Webster's Third</u>

<u>New International Dictionary Unabridged</u> 2279 (2002)

("<u>Webster's</u>").  In another recognized source, substance is

defined "[t]hat of which a physical thing consists; the material

of which a body is formed and in virtue of which it possesses

certain properties," "[a]ny particular kind of corporeal

matter," and "[a] species of matter of a definite chemical

composition."  XVII <u>Oxford English Dictionary</u> 65 (2d ed. 1989)

("<u>O.E.D.</u>").[10]  The khat plant is properly described as a

substance.

---

[10] The defendants argue that Congress could not have intended
khat to be a substance, since they assert that the CSA does not
treat coca leaves as a substance.  They find support for this in
the separate listing of coca leaves in Section 841(b)(1)(A),
where the statute imposes a mandatory minimum term of
imprisonment on the distribution of 5 kilograms or more "of a
mixture or substance containing a detectable amount of (1) coca
leaves . . . ."  21 U.S.C. § 841(b)(1)(A).  They make similar
arguments with respect to the inclusion of the plants <u>Cannabis</u>
<u>sativa L.</u>, opium poppy, and peyote in Schedule I.  This is
entirely unpersuasive.  Fundamentally, it is an argument that
Congress was required to list the khat plant in its drug

Even if the Indictment had used the term "material" from Section 1308.11(f) instead of the phrase "mixtures and substances," the meaning would be no less clear.  A material is defined as, among other things, "the whole or a notable part of the elements or constituents or substance of something physical."  Webster's at 1392 (2002).  It has also been defined as "[t]he elements, constituent parts, or substance of something (whether physical or non-physical)."  IX O.E.D. at 465.  In light of these definitions, the khat plant and its leaves constitute material, and are covered by the plain language of the statute if they contain cathinone.

Third, the issue of whether a substance is "usable" or "consumable" has arisen in a context entirely inapposite to the issues raised by the defendants, and in any event provides them with no comfort.  The cases to which the defendants refer have considered what materials and substances should be weighed to arrive at the quantity necessary to trigger the mandatory minimum sentencing provisions.  See, e.g., United States v.

---

schedules to make distribution of khat containing cathinone illegal.  The regulation unambiguously prohibits distribution of any "material" containing cathinone.  21 C.F.R. § 1308.11(f). This is sufficient notice that distribution of the khat plant containing cathinone is forbidden, assuming the scienter requirements are met.  Caseer, 399 F.3d at 839; Hussein, 351 F.3d at 16.  A more appropriate comparison is with the "magic" mushroom.  While it is not listed as a controlled substance, two of its ingredients are:  psilocybin and psilocin.  See 21 C.F.R. § 1308.11(d)(28-29).

23

Stewart, 361 F.3d 373, 377-78 (7th Cir. 2001) (collecting cases).  In doing so, and in reliance on the Court's analysis in Chapman, 500 U.S. at 465, which endorsed weighing the blotter paper on which LSD was stored, some of them have adopted a "market-oriented" approach, and have considered whether the medium in which the controlled substance is contained is in a "usable" or "consumable" form.  Stewart, 361 F.3d at 377.  Of course, the khat plant is usable by the consumer, and its juices and contents are consumable as it is chewed.  Therefore, even if it were appropriate to draw from this line of cases, they teach that it is entirely consistent with Congressional intent to consider the khat plant as the medium through which the controlled substance cathinone is provided to the market.[11]

Finally, the defendants are charged with conspiracies to distribute and import cathinone.  While the quantity of cathinone which may be (or may not be) present in any khat plants seized from the defendants or in the khat plant generally may prove of importance at trial to a jury's evaluation of both

---

[11] The defendants also rely on a Fifth Circuit forfeiture case holding that miniscule traces of cocaine, visible only with the aid of a microscope, were insufficient to establish probable cause to find that an aircraft had been used to transport cocaine into the United States.  United States v. One Gates Learjet, 861 F.2d 868, 872 (5th Cir. 1988).  The court reversed the order of forfeiture.  Learjet has no relevance to the issues presented here.  It did not address the purity of the trace amounts of cocaine or address the sufficiency of a conspiracy charge in an Indictment.

knowledge and intent, it is irrelevant to whether the Indictment has charged a crime.

In sum, the Indictment adequately charges violations of the federal drug laws.  It contains the elements of the offenses and fairly informs the defendants of the charges against which they must defend themselves.  The defendants' attacks on the Indictment depend largely on contorted readings of the CSA which must be rejected.  To the extent that the defendants argue in this motion that they had "no interest" in ingesting or distributing cathinone, that is a factual argument that must await trial.

III. Surplusage

The defendants have also moved to strike certain language in the Indictment as "inaccurate and/or prejudicial surplusage." To prevail on this motion, the defendants must show that the language at issue is irrelevant to the crimes charged, prejudicial, and inflammatory.  United States v. Mulder, 273 F.3d 91, 99 (2d Cir. 2001).  The Government has consented to striking references to cathine.  The remainder of the motion to strike is denied.

The defendants seek to strike the Indictment's references to "the narcotics laws of the United States."  While cathinone is not a "narcotic," as that term is defined in Section 802(17) of Title 21 of the United States Code, the term "United States

25

narcotics laws" is defined as "the laws of the United States for the prevention and control of illicit trafficking in controlled substances (as such term is defined in Section 802(6) of Title 21)." 22 U.S.C. § 2708(k)(5).  The Indictment's reference to the narcotics laws is therefore proper.

The defendants challenge the accuracy of certain allegations.  For example, they contend that khat should not be characterized as a "form" of cathinone, and that the World Health Organization should not be described as having determined that khat is "a highly addictive drug."  These and similar arguments reflect nothing more than factual disputes and do not suggest that language should be stricken from the Indictment.

IV.  Grand Jury Presentation

Finally, the defendants move to dismiss the Indictment on the ground that the Government provided false and misleading evidence to the Grand Jury.  Review of a facially valid indictment is extremely circumscribed and does not include a challenge based on the contention that unreliable evidence was presented to the Grand Jury.  United States v. Williams, 504 U.S. 36, 54 (1992).  A district court may dismiss an indictment due to prosecutorial misconduct before the grand jury only if such misconduct "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the

Supreme] Court and by Congress to ensure the integrity of the grand jury's functions." Id. at 46 (citation omitted).

This prong of the motion essentially repeats the defendants' contentions that khat is not a "substance" and is not a form of cathinone, that the Indictment does not accurately quote the World Health Organization, etc. Again, the defendants' arguments rest on a misreading of the CSA and its implementing regulations, or reflect factual disputes. They do not constitute grounds to dismiss the Indictment for prosecutorial misconduct.

CONCLUSION

With one exception, the defendants' motion to dismiss the Indictment or to strike language from the Indictment is denied. On the consent of the Government, the motion to strike references to cathine is granted.

SO ORDERED:

Dated:     New York, New York
           January 24, 2007

                                    _____
                                    DENISE COTE
                                    United States District Judge